CUDAHY, Circuit Judge,
concurring in Nos. 00-3979 and 01-1148 and concurring in the judgments in Nos. 01-3485, 01-3229 and 01-3230.
I join in the outcomes reached by the majority in the several cases, but I write separately to question the appropriateness of finding a “lockstep” relationship between the copper futures and cash markets in the analysis of the claims of Viacom, Emerson and Ocean View.
The analysis and outcome in Sanner (which relied on the allegations of a complaint, not a summary judgment record) were based on the thesis that the futures market and the cash market tended to move in “lockstep.” Thus, the relationship of futures prices of soybeans on the Chicago Board of Trade and the cash price of soybeans to be realized by farmers could be assumed to be simple, direct and absolutely predictable. “The futures market and the cash market for soybeans are ... ‘so closely related’ that the distinction between them is of no consequence to antitrust standing analysis.” 62 F.3d at 929. Based on the complaint, there could be no question that a given manipulation of the futures market produced a precisely proportionate consequence in the cash market.
*499 This is hardly the ease with the Comex and the market for physical copper. Even though the majority attempts to minimize the departures from a fully direct relationship between the futures and the physicals market (and takes issue with the more critical analysis of these relationships by the district court), under either view “lockstep” becomes more a slogan than a fact. And, of course, it was the existence of a “lockstep” relation that apparently excused Sanner from the strictures of Illinois Brick v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) and squared it with Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The existence, in the case before us, of a negotiable premium (or discount) as part of the price is enough in itself to remove this relationship from the “lockstep” category. And, if the language of Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 216, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990) about the undesirability of exceptions to Illinois Brick were to be applied here, the outcome might be in doubt.
With respect to the possibility of dupli-cative recovery, Sanner is also quite distinguishable. There the plaintiff-farmers produced the commodity, bought none of it and there was no trade in any precursor raw material. Here the plaintiff-manufacturers bought from integrated producers, which purchased from others substantial quantities of copper cathode and pre-ea-thode copper raw material (the price of which also tended to follow the copper futures market).
I believe, therefore, that the case before us, although it seeks to apply Sanner’s principle, may be a major step beyond Sanner. The outcome, however, may be justified insofar as there is sufficient evidence that the defendants engaged in massive physical cathode transactions and intended to manipulate physical prices as well as futures prices and thus to injure purchasers such as the plaintiffs.- See Sanner, 62 F.3d at 929 (“even if we were to assume ... that there is a distinction between markets that is relevant to antitrust standing, the farmers here have alleged that one of the CBOT’s objectives in adopting the Resolution was to prompt a price decline in the cash market for soybeans.”).